UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
MICHAEL SAUNDERS,

|                                    |                          |
|------------------------------------|--------------------------|
| Plaintiff,                         | **REPORT AND**           |
| -against-                          | **RECOMMENDATION**       |
|                                    |                          |
| NATHAN CAVADA, JIMMY JAZZ, INC.,   | 19-CV-3279               |
| TYLER MOULTON, "JOHN DOES" Nos. 1-12, | (Kovner, J.)          |
|                                    | (Marutollo, M.J.)        |
|                                    |                          |
| Defendants.                        |                          |

---------------------------------------------------------------------x

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Michael Saunders brings this action under 42 U.S.C § 1983 alleging false arrest, false imprisonment, and malicious prosecution against Defendant Detective Nathan Cavada ("Detective Cavada") and malicious prosecution and state law negligence claims against Defendants Jimmy Jazz, Inc. ("Jimmy Jazz"), Tyler Moulton, and John Does 1-12 (together, "Jimmy Jazz Defendants") (collectively, "Defendants"). *See generally* Dkt. No. 1 ("Compl.").

Currently pending before this Court, on referral from the Honorable Rachel P. Kovner, United States District Judge, are Jimmy Jazz Defendants' motion for summary judgment (Dkt. No. 121) and Detective Cavada's motion for summary judgment (Dkt. No. 125). *See* Referral Order dated September 20, 2023. For the reasons set forth below, the Court respectfully recommends that both Jimmy Jazz Defendants' motion for summary judgment and Detective Cavada's motion for summary judgment be **GRANTED**.

## I.     **Background**

### A.     **Factual Allegations**

The following facts, taken from the parties' Local Civil Rule 56.1 ("Rule 56.1")

statements[1] and relevant portions of the record, are undisputed unless otherwise noted.[2]

On June 2, 2016, non-party Nanawoods Napoleon ("Napoleon") case was arrested in

possession of five forged credit cards by Police Officer Khan ("P.O. Khan"). *See* Cavada 56.1, at

¶ 2.   Detective Cavada was assigned to provide P.O Khan with an "arrest enhancement," which

Detective Cavada later described as following "up with the banks and with the true account holders

---

[1] Multiple Local Civil Rule 56.1 statements have been filed in this action but the operative Rule 56.1 Statements are located on the docket as follows: Dkt. No. 96-1 (Rule 56.1 Statement of Jimmy Jazz & Tyler Moulton ("Jimmy Jazz 56.1"); Dkt. No. 126-1 (Rule 56.1 Statement of Detective Nathan Cavada ("Cavada 56.1"); and Dkt. No. 127-1 (Rule 56.1 Statement of Michael Saunders ("Plaintiff's 56.1")).

[2] As noted in *Su v. Top Notch Home Designs Corp.*, No. 20-CV-5087 (GRB) (JMW), 2023 WL 8878553, at *3 (E.D.N.Y. Dec. 22, 2023),

> Under Local Rule 56.1, a party moving for summary judgment must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The opposing party must submit a statement responding to each numbered paragraph, and can include additional paragraphs "to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b). Statements by each party "must be followed by citation to evidence which would be admissible" under Fed. R. Civ. P. 56(c). Local Rules 56.1(d). "Where . . . the record does not support the assertions in a 56.1 statement, those assertions should be disregarded, and the record viewed independently" because "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

"A party may not rest on a mere denial without citing supporting admissible evidence." *Ward v. Nassau Cnty.*, No. 15-CV-4309 (GRB) (LGD), 2023 WL 5417329, at *1 (E.D.N.Y. Aug. 22, 2023) ("Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts.") (citing *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001), *aff'd, Covelli v. Nat'l Gas Distrib. Corp.*, 49 F. App'x 356 (2d Cir. 2002). "Where [] a party opposing summary judgment fails to properly controvert a movant's statement of material fact, such statement will be deemed admitted for the purposes of the motion." *Cemetery Workers Supplemental Pension Fund by Alladeen v. Lutheran All Faiths Cemetery*, No. 19-CV-6897 (RPK) (RML), 2021 WL 7908022, at *1 (E.D.N.Y. Sept. 9, 2021) (citation and quotation marks omitted).

for those accounts that were in [] Napoleon's possession." *See* Hearing Transcript of Defendant Cavada, Dkt. No. 126-4, at 42-44 (describing "arrest enhancements" for arrests involving forged credit cards); Cavada 56.1, at ¶ 4. In conducting the "arrest enhancement," Detective Cavada became involved in the investigation of fraudulent transactions that occurred on May 28, 2016, May 29, 2016, and June 4, 2016 at a Jimmy Jazz store[3] located at 253-01 Rockaway Boulevard in Queens, New York. *Id.*, at ¶ 1; Jimmy Jazz 56.1, Dkt. No. 96-1, at ¶ 9.[4]

Detective Cavada used the information gleaned from the magnetic strips on the credit cards in Napoleon's possession to determine that several of these credit card accounts belonged to Capital One and Barclays banking customers. *Id.* at ¶ 7. Detective Cavada contacted the banks to obtain additional pertinent information regarding whether fraudulent activities were detected on Capital One and Barclays accounts. *See* Hearing Transcript of Defendant Cavada, at 46. The banks confirmed to Detective Cavada that several relevant fraudulent transactions were recorded at a Jimmy Jazz store in Rosedale, Queens. *Id.*; Cavada 56.1, ¶¶ 7-8.

On June 12, 2016, Detective Cavada visited the Jimmy Jazz store at 253-01 Rockaway Boulevard in Rosedale, Queens, New York and notified Jimmy Jazz of the credit card fraud. Cavada 56.1, at ¶¶ 9-10, Plaintiff's 56.1, at ¶¶ 9-10; Jimmy Jazz 56.1, at ¶ 11. While visiting the store, Detective Cavada requested that Jimmy Jazz provide surveillance video from the dates of when the purported fraudulent transaction occurred, which Detective Cavada subsequently

---

[3] Jimmy Jazz Inc. is a footwear and apparel retailer store with locations in and around the State of New York. *See* Jimmy Jazz 56.1, at ¶ 2.

[4] After being assigned to conduct the "arrest enhancement," Detective Cavada was informed by P.O Khan that the credit cards recovered from Napoleon following his arrest were deemed fraudulent. Cavada 56.1, at ¶ 5. To deem the credit cards fraudulent, P.O Khan's lieutenant "ran" the purportedly-fraudulent credit card numbers through a "bin reader"—a system that can determine whether the card numbers embossed of physical credit cards match the account numbers on the magnetic strips on the cards. *Id.*

obtained and reviewed. *Id.* at ¶ 12; Cavada 56.1, at ¶¶ 11-13. Jimmy Jazz also provided Detective Cavada with a "chargeback record," which is "a letter from financial institutions to merchants alerting the merchants that a credit card account was used without the permission of the account holder…" *Id.* at ¶¶ 16-17, Plaintiff's 56.1 at ¶¶ 16-17. The "chargeback records" provided Detective Cavada with additional information regarding additional compromised accounts belonging to customers at various credit card companies. Cavada 56.1, at ¶ 18, Plaintiff's 56.1 at ¶ 16. While reviewing the surveillance footage provided by Jimmy Jazz, Detective Cavada observed Napoleon "with another person swiping multiple credit cards to make purchases." Cavada 56.1, at ¶ 14. Detective Cavada was able to identify the second perpetrator as non-party Kendo Hammond ("Hammond"). *Id.* at ¶ 21.

From the information contained in the banking records provided along with additional surveillance footage, Detective Cavada was able to determine that at least four individuals used fraudulent credit cards to make unauthorized purchases at the Jimmy Jazz store: Napoleon (identified from his arrest), Hammond (identified through his highly-publicized relationship with Napoleon), non-party William Cairns (identified, via an NYPD database search, by a shamrock tattoo on his neck displayed in the surveillance video); and a fourth individual. *Id.* at ¶¶ 21-23; *see* Dkt. No. 126-3.

In investigating the identity of this fourth individual, Detective Cavada returned to the Jimmy Jazz store on July 7, 2016; Jimmy Jazz provided Detective Cavada with a recently filled-out sneaker "sign up sheet" (hereinafter, the "Sneaker Sign-up Sheet"). *Id.* at ¶ 24; *see also* Exhibit M1, Dkt. No. 96-16, at 50. The Sneaker Sign-up Sheet is a raffle list maintained by Jimmy Jazz where customers can express interest in purchasing a specific pair of coveted sneakers. Cavada 56.1, at ¶ 25; Plaintiff's 56.1, at ¶ 25; Exhibit F, Dkt. No 126-9. The Sneaker Sign-up Sheet was

available to customers to sign on or about June 22, 2016.  *See* Dkt. No. 126, Exhibit C-1, at 46.

As Plaintiff testified at his deposition in response to a question as to what Plaintiff meant about

the Sneaker Sign-up Sheet:

> Well it's the sign-up sheet.  [. . .] [A] a lot of stores now do raffles, which means
> that you got to put your name down on a raffle sheet.  And [] if you win the shoe
> basically, if they call you and they say, "Hey we got your sneaker," and you have
> to give the description of which sneaker, your foot size.  And if they decide to call
> you, and they'll tell you, "Hey, listen, [] you got the sneaker.  When are you going
> to come pick it up?"  They give you, like, either the same day or a day or two later
> to pick up the sneaker before they put it out and sell it to somebody else.  So that's
> basically what a [Sneaker Sign-up Sheet] is.  It's basically, like, a raffle for you to
> put your name down. You have to be in the store to put your name down for that
> particular sneaker.

Dkt. No. 126-20, at 124-25.

On the Sneaker Sign-up Sheet, Napoleon's name and a name matching Plaintiff's were

listed consecutively, with both expressing interest in the Air Jordan Retro 12 sneakers.  *See*

Cavada's Memorandum of Law in Support of Summary Judgment ("Cavada's Mem. of Law"),

Dkt. No. 126 at 8;[5] Dkt. No 126-9.  Notably, one of the fraudulent purchases made on June 4, 2016

was for a pair of Air Jordan Retro 11 sneakers in a men's size 11—the same size that Plaintiff later

listed on the Sneaker Sign-up Sheet for Air Jordan Retro 12 sneakers.  *Id.* at 9; *cf.* Exhibit F, Dkt.

No 126-9.  Plaintiff does not dispute that the name, number, shoe size, and signature found on the

Sneaker Sign-up Sheet is his.  Cavada 56.1, at ¶¶ 28, 39, 40, 59.  Plaintiff later testified that "he

probably did" go to Jimmy Jazz on June 4, 2016.  *See* Dkt. No. 126-20.

Detective Cavada's colleague, Detective Spagnola, upon receipt of the Sneaker Sign-up

Sheet, conducted NYPD database inquiries into each name on the Sneaker Sign-up Sheet on his

Department phone in an effort "to identify the outstanding subject of this investigation."  Dkt. No.

96-16, at 50.  From this NYPD search, Detective Cavada obtained a photograph of Plaintiff.  *See*

---

[5] Citations to memoranda of law are to the ECF-docketed page numbers.

Cavada's Mem. of Law, at 8.  Detective Cavada was able to then match Plaintiff's photograph with the subject of the Jimmy Jazz surveillance footage and "believed that Plaintiff, based on the photograph he obtained, matched the physical description of one of the individuals observed in the surveillance videos committing the fraudulent purchases at Jimmy Jazz." *Id.* (citing Cavada 56.1 at ¶¶ 27-29, Dkt. No. 126-11).  As a result of Detective Cavada's investigation, Plaintiff was arrested and later indicted by a Grand Jury on charges on (1) Criminal Possession of a Forged Instruments in the Second Degree, (2) Falsifying Business Records in the First Degree, (3) Identity Theft in the First Degree, (4) Petit Larceny, (5) Criminal Possession of Stolen Property in the Fifth Degree, (6) Identify Theft in the Third Degree, (7) Unlawful Possession of Personal Identification Information in the Third Degree, (8) Grand Larceny in the Fourth Degree, (9) Criminal Possession of Stolen Property in the Fourth Degree, and (10) Scheme to Defraud in the Second Degree.  *See* Cavada 56.1, at ¶¶ 1, 42; *see also* Indictment in *The People of the State of New York v. Michael Saunders*, No. 1914/2017, Dkt. No. 126-13.  Ultimately, Plaintiff's criminal case was tried before a jury on or about June 1, 2018 and Plaintiff was acquitted on all accounts.  Cavada 56.1, at ¶ 62.

Plaintiff now challenges Detective Cavada's purported misidentification and, in doing so, alleges that Detective Cavada acted in concert with Jimmy Jazz, its manager Tyler Moulton, the relevant banks and entities in an effort to initiate criminal proceedings against him and cover-up wrongdoing.

As to Detective Cavada, Plaintiff challenges the probable cause determination on three grounds: (1) the surveillance video fails to show that any of the suspects acted in concert; (2) no stolen merchandise or "bogus cards" were recovered from Plaintiff's house; and (3) Plaintiff was misidentified on the surveillance footage as his likeness was completely dissimilar to the suspect recorded on the surveillance footage.  *See* Plaintiff's Memorandum of Law in Opposition

("Plaintiff's Opposition"), Dkt. No. 127, at 4-5.  Plaintiff's Opposition proceeds with the proposal of alternative theories that Detective Cavada should have pursued.  Plaintiff's Opposition, at 14-19.  Plaintiff suggests that he and the individual seen on the surveillance footage could not be more dissimilar, to wit: that "the suspect had hair, evidently braided in some fashion, protruding from beneath the rear if various baseball-style caps."  *Id.* at 16-17.  Plaintiff also notes that that the suspect's braided hair was "adorned with beads" which were "plainly visible" on the surveillance footage.  *Id.* at 17.  In contrast to the alleged perpetrator, Plaintiff asserts that he was bald on the date of the incident from the effects of cancer treatment.  *Id.* at 17, n. 12.  Plaintiff, however, concedes that he "had begun to see his hair return"—leading to the conclusion that "his appearance in photos taken in connection with that arrest . . . differs from his appearance on June 4 and 5."  *Id.*  Plaintiff also asserts that this fact should have been raised to the Grand Jury, which, in Plaintiff's view, would have led the Grand Jury to vote *not* to indict Plaintiff.  *Id.* at n.12; 28.

As to Jimmy Jazz and Tyler Moulton, Plaintiff asserts that Detective Cavada and the NYPD acted in concert with the store to cover-up the store's own wrongdoings.  Plaintiff's Opposition, at 5-7.  Specifically, Plaintiff appears to argue that Jimmy Jazz initiated Plaintiff's prosecution in concert with law enforcement to avoid dealing with its "manifest complicity" as Jimmy Jazz employees were purportedly aware of the running credit card schemes.  *Id.* at 12.

**B.    Procedural History**

Plaintiff filed this lawsuit pursuant to 42 U.S.C § 1983 against Detective Nathan Cavada, Jimmy Jazz, Tyler Moulton, and twelve John Doe defendants.  Dkt. No. 1.  Plaintiff brings false arrest, false imprisonment, and malicious prosecution claims pertaining to his arrest and prosecution on criminal charges against Detective Cavada.  *Id.* at ¶¶ 31-34.  Plaintiff also brings a malicious prosecution and state law negligence claims against Defendants Jimmy Jazz, Tyler

Moulton, and John Does 1-12. *Id.* at ¶¶ 35-48. Defendants Cavada and Jimmy Jazz have moved for summary judgment on all claims. *See* Dkt. Nos, 121, 125. The motions for summary judgment have been referred to the undersigned by Judge Kovner for a report and recommendation. *See* Referral Order dated September 20, 2023.

## II.    <u>Legal Standard</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "There is 'no genuine dispute as to any material fact' where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)." *Lange v. Dep't of Educ. of City of New York*, No. 17-CV-3443, 2018 WL 4636986, at *2 (S.D.N.Y. Sept. 26, 2018) (Sullivan, J.). The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew

credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996); *Sutera v. Schering Corp.*, 73 F.3d 13, 16 (2d Cir. 1995) (explaining that a court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried." (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)).

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 411 U.S. at 252, are insufficient to create a genuinely disputed fact.

"A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "In other words, '[t]he litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial.'" *Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC), 2024 WL 198319, at *4 (E.D.N.Y. Jan. 18, 2024) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d. Cir. 1980)).

### III.    Discussion

#### A.    False Arrest and False Imprisonment Claims Against Detective Cavada

Plaintiff's § 1983 false arrest claim stems from the Fourth Amendment right to be free from unreasonable searches and seizures, which includes the right to be free from arrest absent probable

cause.[6]  *See Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  The existence of probable cause is an absolute defense to a false arrest claim.  *Id*. at 152; *Weyant*, 101 F.3d at 852 ("[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.").  "The same holds true for [a] false imprisonment claim[ ] because, under New York law, the claim is identical to a false arrest claim and the federal claim looks to the elements of the state claim." *Kilburn v. Vill. of Saranac Lake*, 413 Fed. Appx. 362, 363 (2d Cir. 2011) (citations omitted).  "False arrest and false imprisonment are synonymous causes of action because the elements of the claims are identical."  *Levantino v. Skala*, 56 F. Supp. 3d 191, 200 (E.D.N.Y. 2014).  It is Defendants' burden to establish the existence of probable cause.  *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010) ("When an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense." (quoting *Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 315 (1975))); *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir.2007) (under New York law, an arrest made without a warrant is presumed unlawful unless the officer can prove the existence of probable cause).

"Probable cause exists in the false arrest context when an officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested[.]'"  *Jimenez*, 2024 WL 198319, at *5 (E.D.N.Y. Jan. 18, 2024) (quoting *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012)); *see also Dunaway v. New York*, 442 U.S. 200, 208 n. 9, (1979); *Escalera v. Lunn*, 361 F.3d

---

[6] A false arrest claim under § 1983 is substantially similar to a claim for false arrest under New York law. *See Weyant*, 101 F.3d at 852.  Under New York law, to prove the elements of false arrest, a plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994).  Only the last element is in dispute here.

737, 743 (2d Cir. 2004). Determining whether probable cause exists requires an objective assessment of the facts known to the officer at the time of arrest.[7] *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); *id.* at 153 ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). Accordingly, "[s]ubjective intentions" of the arresting officer "play no role in ordinary, probable cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 85 (2d Cir. 2002) ("[T]he determination of probable cause is an objective one, to be made without regard to the individual officer's subjective motives . . .").

Here, the Court finds that Detective Cavada is entitled to summary judgment on Plaintiff's false arrest and false imprisonment claims because there is no genuine dispute of material fact as to whether Detective Cavada had probable cause to arrest Plaintiff. As discussed above, Detective Cavada led an investigation arising out of Napoleon's arrest for possession of fraudulent credit cards. Detective Cavada learned that transactions stemming from those fraudulent credit cards were made at a Jimmy Jazz store in Queens. Detective Cavada used the information obtained from those fraudulent credit cards to determine that several of the credit card accounts belonged to Capital One and Barclays banking customers. After contacting Capital One and Barclays, Detective Cavada learned that several additional fraudulent transactions were recorded at Jimmy Jazz. Detective Cavada subsequently retrieved surveillance videos from the transactions at issue,

---

[7] Pursuant to the collective knowledge doctrine, facts known to one member of a law enforcement team cooperating in an investigation are presumed to be shared by the others when determining the existence of probable cause to arrest. *See Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003). Accordingly, any facts that were known to Defendant Detective Cavada, for example, are presumed to have been known by P.O Khan and Detective Spagnola.

as well as chargeback records.  While reviewing the surveillance footage provided by Jimmy Jazz, Detective Cavada observed Napoleon "with another person swiping multiple credit cards to make purchases."  Detective Cavada also obtained a Sneaker Sign-up Sheet from Jimmy Jazz, where Napoleon's name and Plaintiff's name were listed consecutively.  After inputting Plaintiff's name into a NYPD database search, Detective Cavada obtained a photograph of Plaintiff.  Detective Cavada "believed that Plaintiff, based on the photograph [] obtained, matched the physical description of one of the individuals observed in the surveillance videos committing the fraudulent purchases at Jimmy Jazz."  Cavada 56.1 at ¶¶ 27-29.  Equipped with the aforementioned information, Detective Cavada effected Plaintiff's arrest.  Cavada 56.1, at ¶¶ 1, 42.

Under the circumstances presented here, "a competent police officer could believe it was objectively reasonable to arrest [P]laintiff for the [crimes] that had been committed." *Dorsey v. Gannon*, No. 20-CV-1525 (PKC) (PK), 2022 WL 4660555, at *4 (E.D.N.Y. Sept. 30, 2022) (citation omitted).  Plaintiff's argument sounding in claims of mistaken identity fails as a matter of law.  Arresting officers are not required to investigate claims of mistaken identity—even when raised in protest at the time of arrest. *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Further, "when assessing probable cause to arrest, police officers are entitled to rely—as long as such reliance is reasonable—on information provided by other law enforcement officials, including identifications which may later turn out to be mistaken." *Hewitt v. City of New York*, No. 09-CV-214 (RJD) (MDG), 2012 WL 4503277, at *4 (E.D.N.Y. Sept. 28, 2012), *aff'd*, 544 F. App'x 24 (2d Cir. 2013) (citing *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir.2010).

12

When arrests result from a "wide-ranging investigation regarding a series of committed crimes," courts have recognized "the necessity of depending on collective knowledge." *Id.* (citing *People v. Reynolds*, 104 A.D.2d 611, 479 N.Y.S.2d 736, 739 (N.Y. App. Div. 1984)) (quotations in original); *see also Savino*, 331 F.3d 63, 74.  Detective Cavada was certainly entitled to rely on NYPD database inquiries and other officers in making his probable cause determination. Additionally, any suggestion raised by Plaintiff's submission and the factual record that the Detective Cavada's motivations were "self-serving" (Compl., at 2) are not relevant to his false arrest claim.  *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 68 (E.D.N.Y. 2015).

The Court respectfully recommends that Detective Cavada be granted summary judgment as to false arrest and false imprisonment.

### B.    Malicious Prosecution Claim Against Detective Cavada

Plaintiff similarly cannot survive summary judgment on his malicious prosecution claim because he has not raised a genuine issue of material fact regarding probable cause.

"Claims for . . . malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for  . . . malicious prosecution under [New York] state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)); *see also Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003).  A Section 1983 claim for malicious prosecution looks to the relevant state common law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 162 (2d Cir. 2013).  To prevail on a claim of malicious prosecution under New York law, a plaintiff must show that (i) the defendant initiated a prosecution against him, (ii) the defendant lacked probable cause to believe the prosecution could succeed, (iii) the proceeding was begun with malice, and (iv) the matter terminated in the plaintiff's favor.  *See Cameron v. City of New*

13

*York*, 598 F.3d 50, 63 (2d Cir. 2010).  In addition, the Second Circuit requires that in order "to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment."  *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (internal quotation marks omitted); *see also Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) ("In order to allege a cause of action for malicious prosecution under § 1983, [the plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." (emphasis omitted)).

Probable cause "exists in the malicious prosecution context under the 'essentially . . . same" inquiry [as false arrest] 'in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest[.]"  *Jimenez*, 2024 WL 198319, at *5 (quoting *Danielak v. City of New York*, No. 02-CV-2349 (KAM), 2005 WL 2347095, at *10 (E.D.N.Y. Sept. 26, 2005), *aff'd*, 209 F. App'x 55 (2d Cir. 2006)).  Probable cause at the time of arrest supports the initiation of prosecution unless it is "nullified" by "the discovery of information that exculpates the defendant."  *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003).  For probable cause to dissipate, "the groundless nature of the charge must be made apparent by the discovery of some intervening fact."  *Id.* (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)); *see Walston v. City of New York*, 754 F. App'x 65, 66 (2d Cir. 2019).

Here, it is undisputed that a criminal proceeding was initiated, that it terminated in Plaintiff's favor, and that Plaintiff suffered a liberty restraint.  Therefore, the only issues before the Court are (1) whether Defendants had probable cause supporting the criminal charge and (2) whether Defendants acted maliciously.  Plaintiff has not raised a genuine issue of material fact as

to whether Detective Cavada lacked probable cause to believe the prosecution could succeed at the time of Plaintiff's arrest.

As explained above, Detective Cavada had probable cause to effect Plaintiff's arrest. Plaintiff has not pointed to any information that arose after his arrest that would have made apparent to Detective Cavada that the charges against him were groundless.  That is fatal to Plaintiff's malicious prosecution claim.  *See Kinzer*, 316 F.3d at 144; *see Walston v. City of New York*, 289 F. Supp. 3d 398, 409 (E.D.N.Y. 2018) (granting summary judgment for defendant officers because plaintiff "fails to point to the discovery of some intervening evidence or fact undermining the probable cause that supported the arrest"), *aff'd*, 754 F. App'x 65 (2d Cir. 2019); *Gaston v. City of New York*, 851 F. Supp. 2d 780, 794 (S.D.N.Y. 2012) (granting summary judgment for defendant officer on plaintiff's malicious-prosecution claim because probable cause to arrest existed and plaintiff "[did] not allege that anything occurred between the arrest and prosecution that would negate probable cause"); *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545, 562 (E.D.N.Y. 2011) (dismissing malicious prosecution claim where the district court found probable cause to support plaintiff's arrest and plaintiff "alleged no intervening facts which would have made it apparent to defendants that the theft of services charge was groundless"); *Williams v. City of New York*, No. 18-CV-921 (RPK) (PK), 2021 WL 1224894, at *5 (E.D.N.Y. Mar. 31, 2021) (collecting cases).

Plaintiff's indictment is also fatal to his malicious prosecution claim.  *See Johnson v. McMorrow*, No. 19-CV-06480 (PMH), 2023 WL 1797063, at *5 (S.D.N.Y. Feb. 7, 2023) ("When a plaintiff has been indicted by a grand jury, a failure to offer independent, corroborating evidence by the plaintiff is fatal to a malicious prosecution claim under § 1983.").  Notwithstanding Plaintiff's conclusory and contradictory allegations regarding his hair style at the time of the

incident at issue, Plaintiff has "not adduced evidence to rebut the presumption of probable cause for [his] prosecution which was created by the grand jury indictment." *Merrill v. Copeland*, No. 3:19-CV-1240 (BKS) (ML), 2022 WL 3212075, at *16 (N.D.N.Y. Aug. 9, 2022), *aff'd*, 2024 WL 119261 (2d Cir. Jan. 11, 2024). Plaintiff has not shown that there exists a genuine dispute as to any material fact to show that his indictment "was produced by fraud, perjury, the suppression of evidence[,] or other police conduct undertaken in bad faith." *Rothstein v. Carriere*, 373 F.3d 275, 283 (2d Cir. 2004); *see also Gutierrez v. New York*, No. 18-CV-03621 (MKB), 2021 WL 681238, at *12 (E.D.N.Y. Feb. 22, 2021) ("Plaintiff has adduced no evidence from which a reasonable juror could conclude that Defendants procured his indictment through fraud, perjury, or other bad faith."); *Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) (finding that the plaintiff's offer of his "suspicions of impropriety as proof of the defendants' misconduct before the grand jury" insufficient to rebut presumption).

And to the extent Plaintiff relies on his later acquittal in his criminal cases to support his malicious prosecution argument, such an argument is unavailing. An acquittal after trial established the absence of proof beyond a reasonable doubt, not the absence of probable cause. *Id.* (citing *Mitchell*, 786 F. Supp. 2d at 562 ("Subsequent dismissal of claims or acquittal do not, however, have any effect upon the probable cause determination."); *Carlisle v. City of New York*, No. 05-CV-6825, 2007 WL 998729, at *3 (S.D.N.Y. Apr. 2, 2007) (granting summary judgment for defendant officers on malicious-prosecution claim where plaintiff "relie[d] on his acquittal to show that a reasonable person could believe the evidence found in his apartment was planted," explaining that "acquittal is evidence of reasonable doubt, not lack of probable cause"); *see also Brandon v. City of New York,* 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010) (citing *Scully v. City of Watertown*, No. 03-CV-846, 2005 WL 1244838, at *11 (N.D.N.Y. May 25, 2005) ("The simple

assertion that [plaintiff] was acquitted and therefore the officers must have lied is insufficient to overcome the presumption created by the grand jury's indictment ....").

Finally, because Detective Cavada had probable cause to initiate Plaintiff's prosecution, this court need not reach the question of whether the prosecution was motivated by malice. *McKay v. City of New York*, 32 F. Supp. 3d 499, 512 (S.D.N.Y. 2014) (citing *Bonide Prod., Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir. 2000) ("As it was objectively reasonable for [the officer] to believe that he had probable cause to [initiate proceedings] against [the plaintiff], we need not consider the other elements of the malicious prosecution claim.")).

The Court therefore respectfully recommends that Detective Cavada be found entitled to summary judgment on Plaintiff's malicious prosecution claim.

### C.     Qualified Immunity as to Detective Cavada

Even assuming, *arguendo*, that Detective Cavada lacked probable cause and the arrest and prosecution violated Plaintiff's rights, Detective Cavada would still be entitled to summary judgment on qualified immunity grounds. Qualified immunity shields Detective Cavada from liability on Plaintiff's false arrest, false imprisonment, and malicious prosecution claims, because at least arguable probable cause supported Plaintiff's arrest and criminal prosecution.

Qualified immunity [] shields officers from liability for false arrest under Section 1983 so long as 'arguable probable cause' existed 'to arrest the plaintiff.'" *Jimenez*, 2024 WL 198319, at *5 (quoting *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016). "And qualified immunity provides the same shield against claims of malicious prosecution so long as no 'intervening fact' caused the "arguable probable cause" justifying the arrest to "dissipate" before the criminal proceeding was commenced. *Jimenez*, 2024 WL 198319, at *5 (citing *Gaston*, 851 F. Supp. at 793); *see also Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (Bianco,

J.) ("[A]n arresting officer is entitled to qualified immunity on claims of false arrest and malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.") (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)).

Arguable probable cause exists if either (i) "it was objectively reasonable for the officer to believe that probable cause existed," or (ii) "officers of reasonable competence could disagree on whether the probable cause test was met." *Myers*, 819 F.3d at 633 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).  In establishing whether arguable probable cause existed, officers are "entitled to draw reasonable inferences from the facts they possess at the time of a seizure based upon their own experiences." *Cerrone v. Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001) ("It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.").  "This forgiving standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  The denial of summary judgment is appropriate only where an officer's judgment was "so flawed that no reasonable officer would have made a similar choice." *Provost*, 262 F.3d at 160 (citations omitted).  At bottom, qualified immunity "protects government officials when they make 'reasonable mistakes about the legality of their actions." *Doninger v. Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

Here, as a matter of law, officers of reasonable competence could disagree about whether Plaintiff's arrest and prosecution were supported by probable cause, and thus that Detective

Cavada is entitled to qualified immunity on Plaintiff's false arrest, false imprisonment, and malicious prosecution claims. It is undisputed that Detective Cavada reviewed surveillance video footage of the incidents at issue. Having identified at least three of the purported suspects, a reasonably competent officer in Detective Cavada's position, upon receipt of the Sneaker Sign-up Sheet, could have reasonably believed that Plaintiff's name—listed below a known perpetrator in possession of the fraudulent credit cards at issue—may necessitate additional investigation. After the additional investigation, in the form of an NYPD database search yielding a photograph of Plaintiff bearing certain (but not all) similarities with the suspect, a reasonably competent police officer could have reasonably believed that such similarities—in light of the facts known to the officer at the time—created probable cause for Plaintiff's arrest.

As outlined *supra*, the Court finds that Detective Cavada had arguable probable cause to arrest Plaintiff and thus is entitled to qualified immunity as to Plaintiff's false arrest, false imprisonment, and malicious prosecution claims.

### D.      Malicious Prosecution Claim Against Jimmy Jazz Defendants

Jimmy Jazz Defendants are entitled to summary judgment as to Plaintiff's malicious prosecution claim. "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir.2003); *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 28 (E.D.N.Y. 2015). "To establish a cause of action for malicious prosecution, a plaintiff must show the elements of commencement or continuation of a judicial proceeding, malice, want of probable cause, and the successful termination of the precedent action in the plaintiff's favor." *Delince v. City of New York*, No. 10-CV-4323 (PKC), 2011 WL 666347, at *5 (S.D.N.Y. Feb. 7, 2011) (citing

*G & T Terminal Packaging Co. v. Western Growers Ass'n*, 56 A.D.3d 266, 267 [1ˢᵗ Dep't 2008]). A defendant who merely provides information to the police and signs a criminal complaint is not liable for malicious prosecution, whereas liability may arise as to someone who initiates a criminal proceeding by providing false information and withholding evidence. *Id.* (citing *Brown v. Sears Roebuck & Co .,* 297 A.D.2d 205, 209-10 (1st. Dep't 2002)).

"Generally, a civilian defendant who merely furnishes information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed will not be held liable for malicious prosecution." *Id.* (citing *Lupski v. County of Nassau*, 32 A.D.3d 997, 998 (2d Dep't 2006)). "The defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition." *Id.*

There is no support in the record to make a determination that Jimmy Jazz or Tyler Moulton initiated a criminal prosecution or took an active part in the procurement of Plaintiff's arrest. As to Jimmy Jazz, the record reflects that Jimmy Jazz did not initiate or procure criminal proceedings against Plaintiff. *See* Dkt. No. 96-16, at 52-69. Jimmy Jazz notes that it was not aware of Plaintiff's identity until Detective Cavada's affirmative identification. *See* Reply Affirmation of William J. Manning ("Jimmy Jazz Reply"), Dkt. No. 130. Jimmy Jazz assets that it "did nothing more than comply with a request for documents and surveillance film from the police department" and otherwise did not know Plaintiff or encourage the NYPD to arrest him. *Id.* at 8. Indeed, Jimmy Jazz merely responded to requests from law enforcement for documents and surveillance footage and complied with subpoenas to testify in front of the Grand Jury and at trial. *See* Jimmy Jazz Mem. Of Law, Dkt. No. 121-3, at ¶ 12; Cavada 56.1, at ¶¶11-13. It is well-settled in this

20

Circuit that "[o]ne who merely responds to requests for information or who testifies as a witness does not, by those acts, institute or continue a prosecution." *Whittaker v. Duke*, 473 F. Supp. 908, 910 (S.D.N.Y. 1979).

As to Moulton, who was at all relevant times a district manager for Jimmy Jazz, the extent of his involvement appears to be his testimony—as a Jimmy Jazz designee—aimed at "correlating receipts, chargeback [reports], and invoices" with the surveillance videos obtained.  Jimmy Jazz 56.1, at ¶ 2; Jimmy Jazz Mem. Of Law, at ¶¶ 20, 32.  As Jimmy Jazz proffers, Moulton's role would have been limited in this case as credit card fraud cases are handled through Jimmy Jazz's "Loss Prevention," managed by an individual who is not a party in this case. *Id.*  The Court thus concludes that there are no genuine issues of facts precluding summary judgment for Jimmy Jazz Defendants.

The Court respectfully recommend that summary judgment be granted in favor of Jimmy Jazz Defendants as to Plaintiff's malicious prosecution claim.

### E.    State Law Negligence Claim Against Jimmy Jazz Defendants

"Under New York law, the elements of a negligence claim are: '(1) that the defendant owed [plaintiff] a duty of care; (2) that the defendant breached that duty; and (3) that the defendant's breach was the proximate cause of the plaintiff's injuries.'" *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519–20 (S.D.N.Y. 2013).  New York, however, "does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution." *Id.* at 520 (quoting *Paul v. Bank of Am. Corp.*, No. 09-CV-1932 (ENV) (JMA), 2011 WL 684083, at *3 (E.D.N.Y. Feb. 16, 2011)).  "[U]nder New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Watson v. United States*, 865 F.3d 123, 134 (2d

21

Cir. 2017) (citation omitted).   Similarly, there is no tort under New York law of negligent investigation.  *See id.* at 134.

As a result, Plaintiff's asserted theories of negligence has no basis in New York law. *Pandolfo v. U.A. Cable Sys. of Watertown*, 171 A.D.2d 1013, 1014, 568 N.Y.S.2d 981 (4th Dep't 1991) ("As a matter of public policy, there is no cause of action in the State of New York for negligent prosecution or investigation.").   Plaintiff therefore, quite correctly, "does not oppose dismissal of his claims for negligence."  Dkt. No. 130, at 24.

In light of the case law and Plaintiff's concession of dismissal, the Court respectfully recommends that the Court enter summary judgment on behalf of Jimmy Jazz Defendants with respect to Plaintiff's state law negligence claim.

## IV.    <u>Conclusion</u>

Accordingly, the Court respectfully recommends that summary judgment be **GRANTED** as to Detective Cavada and Jimmy Jazz Defendants on all claims.

A copy of this Report and Recommendation is being electronically served on counsel.  Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Kovner.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

Dated:      Brooklyn, New York
            February 20, 2024

                                              _/s/ Joseph A. Marutollo_
                                              JOSEPH A. MARUTOLLO
                                              United States Magistrate Judge