UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MICHAEL SAUNDERS,

                Plaintiff,

v.

NATHAN CAVADA; JIMMY JAZZ, INC.;
TYLER MOULTON; and JOHN DOES 1–12,

                Defendants.
----------------------------------------------------------x

**ORDER ADOPTING REPORT AND RECOMMENDATION**
19-CV-3279 (RPK) (JAM)

RACHEL P. KOVNER, United States District Judge:

Before the Court is Magistrate Judge Marutollo's report and recommendation ("R. & R.") recommending that I grant defendants' motions for summary judgment. I adopt the R. & R.'s recommendations in full, as well as its reasoning to the extent described in this order.

## BACKGROUND

Plaintiff Michael Saunders was prosecuted in state court in connection with credit card fraud that occurred at a Jimmy Jazz store in Queens. A jury acquitted him on all counts. Plaintiff then brought this action under 42 U.S.C. § 1983, asserting false-arrest, false-imprisonment, and malicious-prosecution claims against Detective Nathan Cavada, who investigated the alleged fraud, as well as malicious prosecution and state-law negligence claims against Jimmy Jazz, Inc., Jimmy Jazz's manager Tyler Moulton, and John Does 1–12 (collectively, "the Jimmy Jazz defendants"). *See generally* Compl. (Dkt. #1).

Following discovery, Detective Cavada and the Jimmy Jazz defendants both moved for summary judgment. *See* Mot. for Summ. J. by Jimmy Jazz Defs. (Dkt. #121); Mot. for Summ. J. by Nathan Cavada (Dkt. #125). On February 20, 2024, Magistrate Judge Marutollo issued an

1

R. & R. recommending that defendants' motions for summary judgment be granted. *See* R. & R. 1, 22 (Dkt. #131). Plaintiff filed a letter objecting to the R. & R. *See* Pl.'s Obj. (Dkt. #133).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted). "A fact is material if it might affect the outcome of the suit under governing law." *Ibid.* (citation omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the nonmovant. *See ibid.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If a party timely objects to a magistrate judge's recommendation on a dispositive issue, the district court must "determine *de novo*" those parts of the ruling that have been "properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1). Those parts of an R. & R. that are uncontested, or to which no proper objection has been made, may be reviewed for "clear error." *Alvarez Sosa v. Barr*, 369 F. Supp. 3d 492, 497 (E.D.N.Y. 2019); *see Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) (citing Fed. R. Civ. P. 72 advisory committee's note to 1983 addition). Clear error will be found only when, upon review of the entire record, the Court is left with "the definite and firm conviction

that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted).

## DISCUSSION

Plaintiff's objections to the R. & R. are overruled and defendants' motions for summary judgment are granted.

**I. Detective Cavada's Motion for Summary Judgment Is Granted.**

Detective Cavada is entitled to summary judgment on plaintiff's false-arrest, false-imprisonment, and malicious-prosecution claims on qualified immunity grounds, because arguable probable cause supported plaintiff's arrest and criminal prosecution.

Probable cause is an absolute defense to a false arrest or false imprisonment claim. *See Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011). For false-arrest and false-imprisonment claims, a defendant bears the burden of establishing probable cause when an arrest is not made pursuant to a judicial warrant. *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010). Probable cause exists when a law enforcement officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *United States v. Diaz*, 854 F.3d 197, 203 (2d Cir. 2017) (citation omitted). To prevail on a malicious-prosecution claim, a plaintiff must show, *inter alia*, that there was no probable cause for the prosecution, and probable cause at the time of arrest supports the initiation of prosecution unless it is "nullified" by "the discovery of information that exculpates" the person being prosecuted. *Kinzer v. Jackson*, 316 F.3d 139, 143–44 (2d Cir. 2003).

Qualified immunity shields officers from liability for false arrest or false imprisonment "so long as 'arguable probable cause' existed 'to arrest the plaintiff,'" and it shields them from liability

3

for malicious prosecution "so long as no 'intervening fact' caused the 'arguable probable cause' justifying the arrest to 'dissipate' before the criminal proceeding was commenced." *Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC), 2024 WL 198319, at *5 (E.D.N.Y. Jan. 18, 2024) (first quoting *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016); and then quoting *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012)). "Arguable probable cause exists if either (i) 'it was objectively reasonable for the officer to believe that probable cause existed,' or (ii) 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Ibid.* (quoting *Myers*, 819 F.3d at 633).

Here, Judge Marutollo found that Detective Cavada is entitled to summary judgment on plaintiff's false-arrest and false-imprisonment claims because there is no genuine dispute of material fact as to whether Detective Cavada had probable cause to arrest plaintiff. R. & R. 11. Judge Marutollo likewise found that Detective Cavada is entitled to summary judgment on plaintiff's malicious-prosecution claim because, among other reasons, plaintiff has not pointed to any information that arose after his arrest that would have nullified the probable cause. *Id.* at 14–15. In the alternative, Judge Marutollo determined that even if Detective Cavada lacked probable cause, he would still be entitled to summary judgment on qualified immunity grounds. *Id.* at 17.

Judge Marutollo's probable cause finding was based on the following undisputed facts. After the arrest of non-party Nanawoods Napoleon for possession of forged credit cards, Detective Cavada began an investigation into possible fraud. *Id.* at 2–3. Detective Cavada determined using data on the credit cards in Napoleon's possession that the forged cards corresponded to credit accounts for Capital One and Barclays customers. He then contacted the banks and determined that several fraudulent transactions on those cards were recorded at a Jimmy Jazz store in Queens. *Id.* at 3.

4

Detective Cavada obtained surveillance videos from Jimmy Jazz from the dates when the fraudulent transactions occurred. *Id.* at 3–4. From that footage, Detective Cavada determined that at least four individuals made fraudulent purchases at Jimmy Jazz: Napoleon, two other identified individuals, and a fourth unidentified individual. *Id.* at 4. In investigating the identity of the fourth individual, Detective Cavada obtained from the Jimmy Jazz store a sneaker raffle sign-up sheet. *Ibid.* On the sign-up sheet, Napoleon's name and plaintiff's name were listed consecutively, both expressing interest in Air Jordan Retro 12 sneakers. *Ibid.* One of the fraudulent purchases made at Jimmy Jazz was of a pair of Air Jordan Retro 11 sneakers in the same size that plaintiff listed on the sign-up sheet. *Id.* at 5. Detective Cavada's colleague conducted NYPD database inquiries into each name on the sign-up sheet, from which Detective Cavada obtained mugshots of plaintiff. *Id.* at 5–6. Detective Cavada concluded based on the mugshots that plaintiff matched the physical description of the unidentified individual in the surveillance video. *Id.* at 6.

As Judge Marutollo concluded, based on these facts, Detective Cavada is at minimum entitled to summary judgment on qualified immunity grounds, because he at least had *arguable* probable cause to arrest and prosecute plaintiff. Plaintiff argues that Detective Cavada lacked probable cause—or arguable probable cause—because it was unreasonable for Detective Cavada to conclude based on plaintiff's mugshots that he was the person shown in the Jimmy Jazz surveillance footage: plaintiff "was gleamingly bald" in the mugshots in the NYPD database, whereas the suspect in the surveillance footage "had lavishly braided hair." Pl.'s Obj. 3; *see id.* at 8. But the physical differences between plaintiff in his mugshots and the suspect in the surveillance footage are not, in themselves, fatal to a finding of arguable probable cause. While plaintiff is bald in his mugshots and the suspect has braided hair, "it is unreasonable to expect police to rule out . . . plaintiff as [the] suspect" in the video "based solely upon a difference in hair length." *Ortiz*

5

*v. Village of Monticello*, No. 06-CV-2208 (ER), 2012 WL 5395255, at *9 (S.D.N.Y. Nov. 2, 2012) (granting summary judgment).  Hair can change, and indeed plaintiff concedes that while he was bald at one time due to cancer treatment, he later began to see his hair return.  *See* R. & R. 7.

Critically, Detective Cavada's determination of probable cause with respect to plaintiff did not rest exclusively on a visual identification.  "Probable cause is, of course, evaluated on the totality of the circumstances," and "the fact that [a plaintiff] matches even a vague description provided by a witness"—or in this case, that the mugshots vaguely matched the surveillance video—is a "factor[] to be considered in evaluating probable cause," the significance of which "may be enhanced or diminished by surrounding circumstances."  *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007).  Detective Cavada relied not only on a comparison of the surveillance footage and mugshots, but also on the sneaker sign-up sheet, which he reasonably inferred placed plaintiff at the Jimmy Jazz store around the time of a suspected co-conspirator and indicated plaintiff's interest in sneakers of the same size and line that were fraudulently purchased.  Given the combination of Detective Cavada's video review and the signup sheet evidence, Detective Cavada's "judgment was [not] so flawed that no reasonable officer would have made a similar choice" to arrest plaintiff under those circumstances.  *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (citation omitted).

Plaintiff's remaining objections to the R. & R., as they pertain to Detective Cavada's motion for summary judgment, are wholly without merit.  To begin, many of plaintiff's objections are based on mischaracterizations of the R. & R.  For example, plaintiff quotes a portion of the R. & R. describing the parties' arguments and objects to those arguments as if they were findings made by Judge Marutollo, which they were not.  *See* Pl.'s Obj. 11–12 (quoting R. & R. 6).  Plaintiff likewise incorrectly states that the R. & R. "accepts as true" Detective Cavada's "perjurious, and

6

vigorously disputed, claim" that "he first learned of plaintiff's name" from the sneaker sign-up sheet, whereas police reports "show that he was investigating the name Michael Saunders" prior to receiving the sign-up sheet on July 7, 2016. Pl.'s Obj. 7 (citing R. & R. 4). The R. & R. nowhere assumes that Detective Cavada learned plaintiff's name for the *first* time from the sign-up sheet or otherwise factors into its analysis the point at which Detective Cavada began investigating plaintiff.

Plaintiff raises various other objections suggesting that Detective Cavada's misidentification of plaintiff was not inadvertent but rather intentional and malicious, and later covered up. *See* Pl.'s Obj. 8–12. However, as Judge Marutollo explained, "[t]he determination of probable cause is an objective one, to be made without regard to the individual officer's subjective motives." R. & R. 11 (quoting *United States v. $557,933.89, More or Less, in U.S. Funds,* 287 F.3d 66, 85 (2d Cir. 2002)). Thus, "any suggestion raised by Plaintiff's submission and the factual record that the Detective Cavada's motivations were 'self-serving' . . . are not relevant to his false arrest claim." *Id.* at 13 (citing *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 68 (E.D.N.Y. 2015)).

Plaintiff's objections are therefore overruled, and I adopt Judge Marutollo's recommendation to grant Detective Cavada's motion for summary judgment.

## II. The Jimmy Jazz Defendants' Motion for Summary Judgment Is Granted.

The Jimmy Jazz defendants are entitled to summary judgment on plaintiff's malicious-prosecution claim for the reasons set forth in the R. & R. "Generally, a civilian defendant who merely furnishes information to law enforcement authorities who are then free to exercise their own independent judgment as to whether an arrest will be made and criminal charges filed will not be held liable for malicious prosecution. The defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition."

*Delince v. City of New York*, No. 10-CV-4323 (PKC), 2011 WL 666347, at *5 (S.D.N.Y. Feb. 7, 2011) (quoting *Lupski v. County of Nassau*, 822 N.Y.S.2d 112, 114 (App. Div. 2006)).  Plaintiff argues in his objection, as he did in the summary judgment briefing, that "Jimmy Jazz employees were . . . aware of the running credit card schemes" and the Jimmy Jazz defendants "initiated [plaintiff's] prosecution in concert with law enforcement to avoid dealing with its 'manifest complicity.'"  Pl.'s Obj. 14.  However, setting aside "[c]onclusory allegations, conjecture, and speculation," which "are insufficient to create a genuine issue of fact," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), that claim is unsupported by the record evidence.  Nor is there any support in the record to otherwise "make a determination that Jimmy Jazz or [Jimmy Jazz's manager] Tyler Moulton initiated a criminal prosecution or took an active part in the procurement of Plaintiff's arrest."  R. & R. 20.

Plaintiff's objection is therefore overruled, and I adopt Judge Marutollo's recommendation to grant the Jimmy Jazz defendants' motion for summary judgment.

## CONCLUSION

For the foregoing reasons, plaintiff's objections to Magistrate Judge Marutollo's R. & R. are overruled.  Having found no clear error in the unobjected-to portions of the R. & R., I adopt the R. & R.'s recommendations, as well as its reasoning to the extent described in this order.  Accordingly, defendants' motions for summary judgment are granted.  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

                                                */s/ Rachel Kovner*
                                                RACHEL P. KOVNER
                                                United States District Judge

Dated: September 25, 2024
       Brooklyn, New York